Ruben L. Iñiguez
Assistant Federal Public Defender
ruben_iniguez@fd.org
Bryan E. Lessley
Assistant Federal Public Defender
bryan_lessley@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

Attorneys for Petitioner

PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| AMIN ULLAH,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>GEORGE W. BUSH, et al.,<br><br>　　　　　Respondents. | CV 05-1237 (ESH)<br><br>MOTION FOR RECONSIDERATION AND REQUEST FOR BRIEFING SCHEDULE |

　　　Petitioner, Amin Ullah, through counsel, Ruben L. Iñiguez and Bryan E. Lessley, respectfully moves this Court to reconsider its Minute Order of August 13, 2007, directing that, "[i]n light of Respondents' Notice of Transfer of Petitioner [33], the above-captioned case should be administratively closed and removed from the Court's docket." Counsel for Mr. Ullah has conferred with counsel for Respondents concerning this motion. Respondents oppose this motion.

### A. Procedural Background

In or around October 2002, Mr. Ullah was seized in Afghanistan and forcibly taken to the U.S. Naval Station in Guantánamo Bay, Cuba. During, or shortly after, his original Combatant Status Review Tribunal proceeding (CSRT), Mr. Ullah learned that Respondents had designated him as an "enemy combatant." On February 22, 2005, he submitted a *pro se* petition for writ of habeas corpus in the form of a handwritten letter. CR 1. Mr. Ullah made clear he was "an innocent man." *Id.* Four months later, on June 22, 2005, his habeas corpus petition was filed with this Court. *Id.*

On April 11, 2006, undersigned counsel entered notices of appearance. CR 8. Counsel immediately moved the Court to require Respondent's to file a Factual Return. CR 12. On August 10, 2006, the Court overruled Respondents' objections and granted the motion. CR 15. The Court directed Respondents to "provide a factual return relating to the determination of the CSRT ... within 60 days." *Id.* On October 10, Respondents filed the Factual Return as ordered. CR 24.

Six months ago, on February 22, 2007, counsel for Mr. Ullah received an email from the Department of Defense (DOD). *See* email, attached hereto as Exhibit A. Although the email stated that Mr. Ullah had been "approved to leave Guantanamo," it noted that his transfer was not only "subject to the process for making appropriate diplomatic arrangements for his departure," but also "subject to ongoing discussions." *Id.* The email further stated that "such a decision [to repatriate Mr. Ullah to Afghanistan] does not equate to a determination that [he] is not an enemy combatant, nor is it a determination that he does not pose a threat to the United States or its allies." *Id.*

Two months later, on April 19, 2007, Respondents filed a Motion to Dismiss the habeas corpus petitions filed by 162 prisoners at Guantanamo Bay, including Mr. Ullah. CR 28.  On May 3, Mr. Ullah filed a memorandum of law opposing Respondents' motion. CR 30.  On July 5, 2007, this Court denied "without prejudice [28] Respondents' Motion to Dismiss pending the Supreme Court's decision in *Boumediene, et al. v. Bush, et al.*, No. 06-1195, and *Al Odah, et al. v. United States, et al.*, No. 06-1196."

Less than one week ago, on August 9, 2007, after having unlawfully detained Mr. Ullah for almost five years, Respondents' counsel informed counsel for Mr. Ullah in writing that Respondents finally had "relinquished custody of [Mr. Ullah] and transferred him to the control of the Government of Afghanistan."  *See* email, attached hereto as Exhibit B.  The next day, August 10, Respondents filed a Notice of Transfer of Petitioner.  CR 33.

On August 13, 2007, in response to the Notice of Transfer filed three days earlier, this Court exercised jurisdiction and *sua sponte* entered a Minute Order directing that "the above-captioned case should be administratively closed and removed from the Court's docket."

Mr. Ullah respectfully requests that the Court reconsider its Minute Order and set the matter for briefing.  As demonstrated below, this case should remain open and on the Court's docket.  The disputed issue remains whether Mr. Ullah was unlawfully detained despite his not being an "enemy combatant."  He continues to face serious collateral consequences as a result of both his unlawful detention and his wrongful designation by respondents as an "enemy combatant."[1]  Mr. Ullah urges this Court to consider his habeas

---

[1] Counsel has not been able to confirm whether Mr. Ullah continues to be wrongfully and unlawfully held in custody – only now by the government of Afghanistan – or whether he has been released.

corpus petition and adjudicate his claims that he was never an "enemy combatant" and that such a designation was never properly made. Mr. Ullah further requests that the Court set a briefing schedule to allow the parties to address these issues thoroughly.

> B.  **This Court Should Resolve The Question Whether Mr. Ullah Was Unlawfully Detained For Almost Five Years Despite The Fact That He Is Not And Never Was An Enemy Combatant.**

The transfer of a habeas petitioner does not moot his case. *Carafas v. LaVallee*, 391 U.S. 234, 239-40 (1968) (habeas case is not moot if a petitioner, although released from custody, faces sufficient repercussions from his allegedly unlawful punishment). The designation of "enemy combatant" status is potentially more serious than a felony conviction. *Cf. Carafas*, 391 U.S. at 237 (describing the consequences of the petitioner's felony convictions, including disqualification from voting, engaging in certain business, and serving as a juror). The stigma of being labeled as an "enemy combatant" may subject Mr. Ullah to life-threatening personal and/or state-sponsored retaliation and other consequences such as restricting his ability to travel freely, including his ability to travel abroad to other countries to visit family and/or friends. Further, compensation for unlawful detention must begin with a determination of the lawfulness of the detention. See *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (recovery of damages for unlawful conviction required predicate that conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by federal court's issuance of writ of habeas corpus).

Mr. Ullah not only sought his release from unlawful detention, but he also steadfastly has proclaimed his innocence and challenged the wrongfulness of Respondents' designation of him as an "enemy combatant." *See* CR 1 (*pro se* petition). Based on the

evidence currently before this Court, Mr. Ullah should no longer be designated as an "enemy combatant." Respondents' relinquishment of custody of Mr. Ullah simply does not address or resolve the fact that he is "suffering, and will continue to suffer, serious disabilities because of the law's complexities and not because of his fault, if his claim that he has been illegally [detained and wrongfully designated as an enemy combatant] is meritorious." *Carafas*, 391 U.S. at 239.[2]

In *Qassim v. Bush*, 466 F.3d 1073 (D.C. Cir. 2006), the court ruled that there were no collateral consequences that would render the petitioners' habeas corpus petitions not moot once they were released to Albania. However, unlike Mr. Ullah, who remains designated as an "enemy combatant," the petitioners in *Qassim* were specifically designated as "non-enemy combatants" prior to their release. *Qassim v. Bush*, 382 F.Supp.2d 126, 127 (D.D.C. 2005). As a result, the petitioners in *Qassim* were unable to present to the appellate court the same collateral consequences that Mr. Ullah will most likely face. *Qassim*, 466 F.3d at 1073.

The habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." *Carafas*, 391 U.S. at 239. As Title 28, United States Code, Section 2243 expressly provides, "[t]he court shall . . . dispose of the matter as law and justice require." That this Court may consider Mr. Ullah's habeas corpus petition and determine (1) that, as an innocent man, his detention was unlawful and (2) that he should

---

[2] The obvious stigma of an "enemy combatant" designation should be supplemented by a briefing schedule that includes all information in Respondents' possession regarding the distribution and potential consequences of the "enemy combatant" designation.

no longer be forced to carry with him the erroneous designation of "enemy combatant" is beyond argument.

### C.  Conclusion

Mr. Ullah should not be required to suffer the consequences of unlawful detention and an invalid designation as an "enemy combatant" simply because Respondents determined that, although an "enemy combatant," he could now be released, almost five years after he arrived at Guantánamo Bay.  He respectfully requests that this Court grant his motion for reconsideration, set a briefing schedule that requires Respondents to set forth for him and the Court the collateral consequences of his wrongful designation as an "enemy combatant" status, and reach the merits of his habeas corpus petition.

Respectfully submitted on August 15, 2007.

/s/ Ruben L. Iñiguez
Ruben L. Iñiguez
Assistant Federal Public Defender


/s/ Bryan E. Lessley
Bryan E. Lessley
Assistant Federal Public Defender