IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIN ULLAH,

Petitioner,

v.

GEORGE W. BUSH, et al.,

Respondents.

Civil Action No. 05-cv-1237 (ESH)

**RESPONDENTS' OPPOSITION TO MOTION FOR RECONSIDERATION AND REQUEST FOR BRIEFING SCHEDULE**

Respondents hereby oppose the Motion for Reconsideration and Request for Briefing Schedule (dkt. no. 69) filed by petitioner Amin Ullah, which seeks reconsideration of the Court's August 13, 2007, Minute Order administratively closing and removing from the docket petitioner's habeas corpus petition. (Minute Order (dkt. no. 33)). Petitioner has not established a justification for reconsideration of the Court's order. As the Court lacked statutory jurisdiction over the habeas petition, this case is now moot, and there is no basis for it to be reopened.

**BACKGROUND**

On August 10, 2007, respondents filed notice that petitioner Ullah had been transferred from detention at the Guantanamo Bay Naval Station to Afghanistan and released from U.S. custody. (Notice of Transfer of Pet'r (dkt. no. 33).) On August 13, 2007, this Court issued a Minute Order stating that "in light of respondents' Notice of Transfer of Petitioner, the above-captioned case should be administratively closed and removed from the Court's docket." Petitioner filed his motion for reconsideration on August 16, 2007.

## ARGUMENT

**A. The Petitioner Has Not Met the Standard for Alteration or Amendment of the Final Order of Dismissal.**

Because the petitioner's motion for reconsideration was filed within 10 days of the final order of dismissal, it is treated as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. "Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). "Rule 59(e) motions 'need not be granted unless the district court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."''" Anyanwutaku v. Moore, 151 F.3d 1053, 1057–58 (D.C. Cir. 1998) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir.1996) (per curiam)).

The petitioner has not met this standard, because as explained below, the Court lacked jurisdiction to consider the habeas petition in the first place. And the petitioner's release from U.S. custody rendered the case moot, justifying its closure and removal from the docket. Consequently, entry of the order at issue did not amount to clear error or manifest injustice.

**B. The Court's Order Could Not Have Amounted to Clear Error or Manifest Injustice, Because the District Court Lacked Statutory Jurisdiction over the Case.**

The Court's closure of petitioner Ullah's case could not have amounted to clear error or manifest injustice warranting relief under Rule 59(e) because the Court lacked jurisdiction over this case pursuant to the statutes governing the Court's jurisdiction.

As the Court of Appeals held in Boumediene v. Bush, 476 F.3d 981 (D.C. Cir. 2007), cert. granted, 127 S.Ct. 3078, 75 U.S.L.W. 3705, 75 U.S.L.W. 3707 (U.S. Jun 29, 2007) (No.

06-1195), this Court lacks jurisdiction over actions challenging or otherwise relating to the detention of aliens held as enemy combatants. See id. at 986–94. The Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), which became law on October 17, 2006, and the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the DTA"), withdraw district court jurisdiction over an action like this, challenging petitioner's detention as an enemy combatant. The MCA amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by an alien detained by the United States as an enemy combatant, or (2) any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of an alien who is or was so detained, except for the exclusive review mechanism in the D.C. Circuit created under the DTA for addressing the validity of the detention of such an alien. See MCA § 7(a). Further, the new amendment to § 2241 took effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001." Id. § 7(b).

The review mechanism created by the DTA, in turn, invests the D.C. Circuit with exclusive jurisdiction to address the validity of the detention of aliens as enemy combatants by the United States, including at Guantanamo Bay, and of final decisions of any military commissions.[1] See DTA § 1005(e)(2)–(3), as amended by MCA. Section 1005(e)(2) of the DTA

---

[1]The Supreme Court in Hamdan held that the provision of the DTA withdrawing district court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, see DTA § 1005(e)(1), did not apply to habeas petitions pending prior to the enactment of the DTA. See Hamdan v. Rumsfeld, 548 U.S. --, 126 S. Ct. 2749,
(continued...)

states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.[2]

With the enactment of the MCA, as the D.C. Circuit made clear in Boumediene, District Court jurisdiction was unambiguously withdrawn. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Thus, this Court was obliged to dismiss Ullah's habeas corpus action, because the Court

---

[1](...continued) 2762-69 (U.S. June 29, 2006). Congress, however, has now addressed the matter through passage of the MCA, which unambiguously withdraws district court jurisdiction in all pending cases such as this, in favor of the exclusive review mechanism available in the Court of Appeals. See MCA § 7.

[2] Worth noting in this regard is that even prior to enactment of the MCA, the DTA invested the Court of Appeals with the same "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." See DTA § 1005(e)(2)–(3). This investment of exclusive jurisdiction in the Court of Appeals, independent of the MCA, deprived the District Court of jurisdiction in cases that began as this one did as a challenge to the detention of petitioner Ullah as an enemy combatant. See, e.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Telecomms. Research & Action Ctr. v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals); cf. id. at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); cf., Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (subject-matter jurisdiction turns on the facts upon filing).

lacked statutory jurisdiction. At the time Ullah filed his petition, Ullah was "determined by the United States to have been properly detained as an enemy combatant or [was] awaiting such a determination." MCA § 7(a). This Court therefore lacked jurisdiction over the petition pursuant to the MCA and the DTA, regardless of subsequent events (although, as discussed below, subsequent events rendered this case moot and therefore jurisdictionally defective).

Furthermore, because petitioner continues to challenge his designation as an enemy combatant and seek relief on that score, see Pet'r Mot. at 3-6, this Court also continues to lack jurisdiction because jurisdiction over such challenges rests exclusively in the Court of Appeals. Whatever arguments, if any, may be marshaled in favor of the existence of some form of jurisdiction ancillary to that in the Court of Appeals provided by the DTA and MCA, it is clear that such jurisdiction would not reside in the District Court, as opposed to some other court. See Telecomms. Research & Action Ctr., 750 F.2d at 75, 78–79; see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." (citation omitted)).

Because the Court lacks jurisdiction over the petition under the statutes which govern this litigation, the present motion should be denied regardless of whether petitioner Ullah currently faces collateral consequences related to his designation as an enemy combatant.

**C.     The Petitioner Has Not Met his Burden of Showing that his Designation as an Enemy Combatant Carries Collateral Consequences that Prevent this Case from Being Rendered Moot.**

The Court's decision closing the case also could not have amounted to clear error or manifest injustice because the petitioner's transfer and release rendered the case moot given that

the Court can no longer grant any remedy. Release from U.S. custody usually resolves the controversy raised by a habeas petition and renders the case moot, because "the traditional function of the writ [of habeas corpus] is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). "[F]or a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that . . . his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." Qassim v. Bush, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (quoting Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004) (alteration in original)). In other words, the petitioner bears the burden of showing that the case or controversy underlying the habeas petition persists because he continues to face collateral consequences related to his detention. Petitioner Ullah has not met this burden.

In Qassim v. Bush, the D.C. Circuit dismissed appeals brought by several former Guantanamo detainees from a district court's decision denying their habeas petitions, finding that the petitioners' release rendered their appeals moot. Id. at 1078. Petitioner Ullah recognizes Qassim as binding, but he argues that the case is distinguishable because the petitioners in Qassim had been determined to be no longer enemy combatants, while petitioner Ullah's designation as an enemy combatant was not lifted in this manner. Petitioner Ullah asserts that he "may" continue to face repercussions based on the enemy combatant designation and that consequently the case is not moot.

In past cases examining the availability of habeas relief after release from custody, the Supreme Court has declined to presume that adverse collateral consequences will flow from a determination other than a criminal conviction. See Spencer v. Kemna, 523 U.S. 1, 7–14 (1998)

(declining to presume adverse collateral consequences flowing from revocation of parole); Lane v. Williams, 455 U.S. 624, 631–33 (1982) (declining to presume adverse collateral consequences from determinations that the respondents had violated parole).  An enemy combatant designation is not a criminal conviction; the identification and detention of enemy combatants is a preventive measure taken "to prevent captured individuals from returning to the field of battle and taking up arms once again." See Hamdi v. Rumsfeld, 542 U.S. 507, 518 (2004) (plurality opinion).  Thus, to avoid dismissal petitioner Ullah bears the burden of identifying specific collateral consequences that he presently faces as a result of the enemy combatant designation.  Petitioner Ullah has not done so; he only speculates that he might face individual or state-sponsored retaliation or restrictions on his ability to travel.  Speculative or intangible repercussions are not sufficient.  See, e.g., McBryde v. Cmte. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the U.S., 264 F.3d 52, 57 (D.C. Cir. 2001) (noting that "when injury to reputation is alleged as a secondary effect of an otherwise moot action, we have required that 'some tangible, concrete effect' remain, susceptible to judicial correction.").

　　　　Moreover, potential repercussions flowing from independent acts by private parties and foreign sovereigns, and not directly from the acts of the respondents, would not establish a case or controversy even if those repercussions were present or imminent.  The petitioner has not shown that a favorable decision in this case would prevent these potential harms from occurring. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992) (when the issue of justiciability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have

been or will be made in such manner as to produce causation and permit redressability of injury"); Greater Tampa Chamber of Commerce v. Goldschmidt, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that a challenge against an executive agreement was not a justiciable case or controversy in part because redress of the plaintiffs' alleged injuries would depend on the independent response of the United Kingdom).

Accordingly, in Idema v. Rice, 478 F. Supp. 2d 47 (D.D.C. 2007), and 2007 WL 841391 (July 12, 2007), the Court found that damage to a petitioner's professional reputation and denial of parental visitation rights did not amount to collateral consequences that would allow the petitioner to continue to pursue a habeas corpus action challenging his alleged unlawful detention in Afghanistan. Id. at *3–*4. The Court found that the alleged adverse consequences, however serious, did not prevent the habeas action from becoming moot, because they were "based on the discretionary decisions of employers or judges and [were] not legally prescribed consequences of incarceration" that were "imposed by state or federal law." Id. at *3. The Court further observed that a grant of habeas corpus relief would not necessarily affect the decisions of employers, family court judges, or foreign authorities. Id. at *3.

In addition, because he has not made the threshold showing required to prevent dismissal of the petition, petitioner Ullah also cannot obtain discovery seeking information on the issue of collateral consequences, if any, from his enemy combatant designation.[3] Cf. Consejo Puertorriqueno por la Paz v. Director, FBI, 458 F. Supp. 1041, 1043 (D.D.C. 1978) (refusing to authorize discovery because "the complaint must stand or fall on its own merits and cannot be

[3] Instead of assuming his burden to demonstrate collateral consequences as the case law requires, petitioner improperly expects respondents to "set forth for him" any such collateral consequences. See Pet'r Mot. at 6.

used as a vehicle for searching out and discovering a right of action" (quoting Fifth Avenue Peace Parade Cmte. v. Gray, 480 F.2d 326, 333 (2d Cir. 1973))).

Petitioner Ullah has not met his burden of showing present adverse consequences flowing from the enemy combatant designation. Accordingly, this case is moot, and the Court's order administratively closing this case and removing it from the docket was not erroneous.[4]

## CONCLUSION

For the foregoing reasons, the Motion for Reconsideration and Request for Briefing Schedule should be denied.

Dated: August 29, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

/s/ JAMES J. SCHWARTZ
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
JAMES C. LUH
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON

[4] Petitioner further argues, citing Heck v. Humphrey, 512 U.S. 477 (1994), that he cannot seek compensation for allegedly unlawful detention without first establishing that his detention was unlawful. The Heck doctrine, however, does not overcome the jurisdictional barriers to continuation of petitioner's case, see supra § B, and, in any event does not prevent the case from becoming moot. See Spencer v. Kemna, 523 U.S. at 17 (rejecting an argument similar to petitioner's in the context of parole revocation because it relied on an unfounded assumption "that a § 1983 action for damages must always and everywhere be available").

JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel: (202) 616-8267
Fax: (202) 616-8202
E-mail: James.Schwartz@usdoj.gov

Attorneys for Respondents