IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMIN ULLAH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1237 (ESH) |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
MOTION FOR A REPORT**

**PRELIMINARY STATEMENT**

Petitioner Amin Ullah, an Afghan national who was a detainee at the United States

military base at Guantanamo Bay, Cuba, was transferred to the exclusive custody and control of

the Islamic Republic of Afghanistan ("IRoA") in August 2007. *See* Declaration of Sandra L.

Hodgkinson, attached as Exhibit A.[1]  Apparently upon learning of the execution of several

individuals at a prison in Afghanistan, Amin Ullah's counsel decided to move this Court for an

order requiring respondents to provide information concerning his status in the Afghan penal

system.  Specifically, the present motion asks that respondents be required to report to the Court

as to whether he is known to be scheduled for execution by IRoA; whether he has been charged

with a crime or an offense; and whether the terms and conditions of his transfer from United

---

[1]  The Hodgkinson declaration, dated August 30, 2007, was filed in support of a motion
in the Court of Appeals to dismiss Amin Ullah's petition for relief brought under the Detainee
Treatment Act.   Under section 1005(e)(2)(D) of that statute, the D.C. Circuit's jurisdiction over
a DTA case ends upon the release of a petitioner from United States custody.  That motion is
currently pending.  No motion expressly seeking dismissal on the basis of Amin Ullah's transfer
has been filed in this Court, although, as explained below and in other papers filed in this
proceeding, the transfer renders this case moot.

States to IRoA custody prohibit his execution.

Amin Ullah's motion should be denied. This Court does not have jurisdiction over this habeas petition as a whole, nor does it have jurisdiction over this specific motion. Moreover, an order granting the relief petitioner seeks would run afoul of significant separation of powers concerns. The imposition by the Court of a reporting obligation for respondents with regard to the status of a foreign detainee transferred to a foreign sovereign's exclusive custody and control would undermine exclusive military and foreign policy prerogatives of the Executive Branch. Further, because Amin Ullah was transferred to the custody and control of IRoA, even as a practical matter a report of information that might be provided by respondents necessarily would not provide an up-to-date statement of Amin Ullah's status; it could not bind respondents in any way nor would it provide a reliable basis for informing counsel or the Court because respondents have no control over IRoA. Thus, the relief Amin Ullah seeks would not meaningfully address any harm to which this motion might be addressed.

Accordingly, Amin Ullah has not met the significant burden that he faces in asking for an injunctive order requiring a report from respondents, and this Court should deny his motion, just as a nearly identical motion was recently denied in another case brought in this Court on behalf of a detainee who had been held by the United States in Afghanistan and transferred to Afghan custody and control. *See* Order attached as Exhibit B, *Ruzatullah v. Gates*, C.A. No. 06-1707 (GK) (D.D.C. October 30, 2007).

**ARGUMENT**

**I.     THIS COURT LACKS JURISDICTION TO GRANT THE REQUESTED RELIEF**

**A.     The Court Does Not Have Jurisdiction Over This Habeas Petition**

Respondents have briefed extensively this Court's lack of jurisdiction over this habeas

petition, and respectfully refer this Court to their filings in support of their Motion to Dismiss

and in opposition to petitioner's Motion for Reconsideration, Dkt. Nos. 28, 31, 36.  The Court

has handled the jurisdictional issues raised here as follows.  The Court did not rule on

respondents' Motion to Dismiss, but upon petitioner's transfer out of Guantanamo Bay this

Court administratively closed this case by minute order entered on August 13, 2007.  On

petitioner's motion for reconsideration of the August 13 order, the Court dismissed the motion

without prejudice on September 17, 2007, noting the parties' respective positions with regard to

the Court's jurisdiction over this case, but ruling that it would be "improper for the Court to

address the merits of the parties' arguments at [that] time."  Dkt. No. 39.  In the September 17

order, the Court noted that questions concerning its jurisdiction are currently pending before the

Supreme Court.  In the present motion, petitioner asks the Court to exercise its jurisdiction.  As

explained in the papers filed on behalf of respondents earlier in this litigation, to which the Court

is respectfully referred, this Court is without jurisdiction to grant the relief requested.

Respondents will provide below only a brief summary of the arguments demonstrating the

Court's lack of jurisdiction.

1.     In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct.

3078 (June 29, 2007), the Court of Appeals upheld the constitutionality of the provision of the

Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600 (2006),

in which Congress expressly provided that this Court lacks jurisdiction over habeas corpus

proceedings such as this.  Under settled rules governing the precedential effect of appellate

rulings, regardless of what might happen in the future in the course of the *Boumediene* litigation,

this Court must act in accordance with the decision in that case now.  *See Maxwell v. Snow*, 409

F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is

overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d

939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law

of the circuit until withdrawn or reversed by the Supreme Court or an *en banc* court."), *vacated*

*on other grounds*, 47 F.3d 1015 (9th Cir. 1995).  That the Supreme Court has granted *certiorari*

in *Boumediene* has no effect on the binding nature of the D.C. Circuit's decision.  *See Ayuda,*

*Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring).  "Unless

and until [a decision of the Court of Appeals] is reversed or overruled by the United States

Supreme Court or by [the Court of Appeals] *en banc*, it remains the law of this circuit and no

amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the

district court."  *Id.*

     While the D.C. Circuit has withdrawn its mandate in *Boumediene*, that fact does nothing

to change this Court's obligation to follow the law of this Circuit; indeed, it endorses the fact

that this Court lacks jurisdiction to proceed with respect to this matter.  As Judge Henderson

pointed out in *Ayuda*, "stay of the mandate merely delayed return to the district court of

jurisdiction over the [claims at issue] and the exercise of its duty to dismiss them; it did not

affect the district court's duty– or ours – to apply the law set forth in [the appellate opinion] to

parties not involved in the appeal."  *Id.*  In other words, once an appellate opinion is issued, "it

4

becomes the law of the circuit" regardless of whether the mandate has been issued. *Id.  See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that district court was bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate).

Making that point absolutely clear, on more than one occasion since the Supreme Court granted *certiorari* in *Boumediene*, the Court of Appeals itself has relied on *Boumediene* in denying motions by detainees who brought cases governed by the MCA.  *See Hamlily v. Gates*, No. 07-1127 (D.C. Cir. July 16, 2007) (attached as Exhibit C); *Belbacha v. Bush*, No. 07-5258 (D.C. Cir. Aug. 2, 2007) (attached as Exhibit D).  The *Hamlily* ruling cites the jurisdictional provisions of the MCA.  In *Belbacha*, which was decided after the D.C. Circuit recalled its mandate in *Boumediene*, the Court of Appeals expressly relied on *Boumediene* and *Maxwell v. Snow* in refusing to deviate from circuit precedent.  And in *Belbacha*, the Supreme Court likewise denied a motion for emergency relief.  *Belbacha v. Bush*, No. 07A98 (U.S. Aug. 10, 2007) (attached as Exhibit E).

2.     Even if, arguendo, this Court had jurisdiction when this habeas petition was filed, Amin Ullah has since been transferred to the exclusive custody and control of IRoA, rendering moot his habeas claims.  *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990) (the lack of a continued personal stake in the outcome of a lawsuit deprives a federal court of jurisdiction); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("the essence of habeas corpus is an attack by a person in custody upon the legality of that custody").  While Amin Ullah has *asserted* that he is in the constructive custody of the United States, he cannot prevail on that argument.  Respondents have provided a sworn declaration establishing that the United States

5

relinquished both custody and control of Amin Ullah to IRoA, which Amin Ullah has not

rebutted in any way other than by unsupported rhetoric.  *See* Hodgkinson Declaration.[2]

Amin Ullah also bases his "constructive custody" argument on the decision in *Abu Ali v.*

*Ashcroft*, 350 F. Supp. 2d 28 (D.D.C. 2004) (J. Bates).  But the fact that "the detainee in *Abu Ali*

was a United States citizen[] [was] a fact that featured prominently in the reasoning of that case."

*Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 197 n.9 (D.D.C. 2005) (J. Bates).  Amin Ullah is not a

citizen, and thus, that decision does not help petitioner.  Moreover, the decision in *Abu Ali* turned

on specific facts alleged in that case that are not present here, and, importantly, the court in *Abu*

*Ali* never found that it had jurisdiction over Abu Ali's claims even on the constructive custody

theory applied there.  That case was dismissed as moot upon Abu Ali's transfer to the physical

and legal custody and control of the United States, thereby eliminating any question about

constructive custody.  *Abu Ali v. Gonzales*, 387 F.Supp.2d 16 (D.D.C. Sep 19, 2005).

**B.    The Court Lacks Jurisdiction Over This Motion**

Not only does this Court lack jurisdiction over this habeas matter as a whole, the MCA

also precludes this Court from granting the specific relief petitioner seeks by expressly barring

any claims regarding, *inter alia*, the treatment of an alien enemy combatant.  *See* 28 U.S.C.

---

[2]  The rhetorical assertions that petitioner's papers contain characterizing American activities at a particular Afghan prison, appear likely to be an allusion to a declaration filed in a *Ruzatullah*, involving the transfer of a detainee from United States custody at the Bagram Air Base in Afghanistan to the control of that country's government.  That declaration, attested to by Colonel Anthony Zabek, a Unites States Army officer with detainee responsibilities in Afghanistan (copy attached as Exhibit F), demonstrates that the United States does not have control over the detainees in that prison.  The declaration undermines petitioner's position; it does not support it.  Indeed, that declaration was submitted in *Ruzatullah*, in which Judge Kessler denied a motion that sought the same relief that petitioner seeks here.

§ 2241(e)(2) (added by MCA § 7(a)) ("[with the exception of Detainee Treatment Act proceedings initiated in the Court of Appeals,] no court, justice, or judge shall have jurisdiction to hear or consider *any other action* against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement [of alien enemy combatant detainees]") (emphasis added).  In other words, separate from the question of whether this habeas petition could proceed – and whether or not Amin Ullah has asserted some constructive custody theory – this Court has no jurisdiction to require respondents to report on the status of Amin Ullah with regard to his detention, transfer, treatment, trial, or conditions of confinement.  This separate MCA provision is not implicated by the pendency of the *Boumediene* case which concerns the provision of the MCA that eliminated district court jurisdiction over habeas cases generally.  Thus, even if the Supreme Court reverses the D. C. Circuit's decision in *Boumediene*, such an outcome would not affect 28 U.S.C. § 2241(e)(2), which precludes district court jurisdiction over requests for relief such as that at issue here. Consequently, even if this Court were to hold that it has habeas jurisdiction in this case, this separate provision of the MCA requires that the present motion be denied.

### C.     The All Writs Act Would Not Provide a Basis for the Relief Sought Here

Petitioner cites the All Writs Act, 28 U.S.C. § 1651(a) (courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions") to contend that the Court has jurisdiction.  That statute, however, does not help petitioner for at least two reasons.  First, the All Writs Act "'confines [a court's] authority to the issuance of process 'in aid of' the issuing court's jurisdiction" and "does not enlarge that jurisdiction.'"  *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)).  As discussed

7

above, *Boumediene* (along with other decisions governing this case) defines the current limits of this Court's jurisdiction. Whatever the Supreme Court might in the future decide in *Boumediene,* the Court of Appeals made clear in that case that this Court currently lacks jurisdiction to take the action that petitioner seeks. Second, the question presented by the present motion is whether respondents will be ordered to provide certain information. The grant or denial of the motion would not aid or undercut the Court's ability to exercise jurisdiction; rather, it would provide information to the Court and to petitioner's counsel. Therefore, the All Writs Act does not provide the authority to grant the relief petitioner seeks here.

## II.     JURISDICTIONAL CONSIDERATIONS ASIDE, AMIN ULLAH IS NOT ENTITLED TO THE ORDER FOR WHICH HE HAS MOVED

### A.     Petitioner Has Not Shown That He Is Entitled To the Relief He Seeks

Beyond the jurisdictional considerations, this Court should deny Amin Ullah's motion for two additional reasons: He has no judicially enforceable right to the information he seeks, and, in any event, significant constitutional obstacles preclude this Court from issuing the requested order.

1.     Petitioner seeks an order requiring respondents to provide information to his counsel and to the Court. He cites no law entitling him to the information because no legal basis exists for an order requiring the provision of any such information. *See, e.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); *Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 976-77 (9th Cir. 1992) (holding that there is "no law to apply" on Administrative Procedure Act review

of agency decision to withhold information from public disclosure, rendering action unreviewable).  Indeed, the two methods that are often used to obtain information from an opposing party in litigation or from the government – discovery and a request through the Freedom of Information Act ("FOIA"), respectively – do not apply here.  As to the first, aside from the fact that the requested information is not subject to any discovery request by petitioner, "'[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'"  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 295 (1969)).  As to the second, Amin Ullah has not even suggested that he has invoked the administrative remedies mechanisms which must be exhausted before seeking relief in court.  5 U.S.C. § 552.

2.      It is apparent that Amin Ullah's purpose for requesting the information is so that he would then ask this Court to intrude into the criminal prosecution of a foreign national by a foreign sovereign.  Indeed, he provides an extraordinary characterization of his own motion: to ask that respondents "certif[y]" petitioner's "continued life."  Petitioner's Motion, at n.1.  Such relief is "a matter beyond the purview of this court."  *Holmes v. Laird*, 459 F.2d 1211, 1215 (D.C. Cir. 1972) (suit by U.S. citizen service members convicted of crimes in West Germany to enjoin their transfer to that country to serve their sentences; court refusing to examine the fairness of their treatment by the foreign government or to enjoin the transfer).  *Cf. U.S. ex rel. Keefe v. Dulles*, 222 F.2d 390, 394 (D.C. Cir. 1955) (in case involving U.S. soldier in French custody, court declined to interfere with French criminal proceeding against soldier).  Issues relating to petitioner's future release, continued detention, and/or prosecution by IRoA under Afghan law are beyond the purview of this Court.  *See Worldwide Minerals, Ltd. v. Republic of*

*Kazakhstan*, 296 F.3d 1154, 1164-65 (D.C. Cir. 2002) ("The act of state doctrine precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory.") (internal quotation marks and citation omitted). *Cf., e.g.*, *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (discussing "rule of noninquiry" which has to do with "the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems").

Petitioner argues that, at a minimum, respondents should be able to report to the Court and to his counsel whether the terms and conditions of his transfer to Afghan custody included a stipulation that he not be subject to capital punishment under Afghan law. By asking respondents to report to this Court the substance of its communications with a foreign sovereign regarding the transfer of an alien enemy combatant detained by the United States military, petitioner in effect is requesting this Court to oversee the Executive's conduct of foreign relations as well as military operations. But there is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of the government." *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) . *See also Joo v. Japan*, 413 F.3d 45, 52-53 (D.C. Cir. 2005) (adjudication that "would undo" Executive's judgment in foreign policy "would be imprudent to a degree beyond our power"); *Schneider*, 412 F.3d at 197 ("pass[ing] judgment on the policy-based decision of the executive" in foreign policy "is not the stuff of adjudication"). And similarly "[w]ithout doubt, our Constitution recognizes that core strategic matters of war-making belong in the hands of those who are best positioned

10

and most politically accountable for making them." *Hamdi v. Rumsfeld*, 542 U.S. 507, 531

(2004) (plurality opinion).

### B.    Amin Ullah Has Not Met the Applicable Standard for Injunctive Relief

Consideration of the various factors that apply on a motion such as this one, for

interlocutory affirmative relief, demonstrate that the motion must be denied.  It is well-

established that a request for preliminary injunctive relief "is an extraordinary and drastic

remedy, one that should not be granted unless the movant, by a clear showing, carries the burden

of persuasion."  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391

F.3d 251, 258 (D.C. Cir. 2004).  To prevail on a request for a preliminary injunction, a movant

"must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer

irreparable injury if the injunction is not granted, 3) that an injunction would not substantially

injure other interested parties, and 4) that the public interest would be furthered by the

injunction.'"  *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).  The

irreparable harm that must be shown to justify a preliminary injunction "must be both certain and

great; it must be actual and not theoretical."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674

(D.C. Cir. 1985).  Petitioner's motion fails to make the showing required to justify the grant of

injunctive relief.

As discussed above, Amin Ullah has no likelihood of success on the merits for lack of

jurisdiction, because he has no source of legal right to the relief he seeks, and because that relief

would run afoul of separation of powers concerns.  The balance of equities also do not favor him.

Amin Ullah seems to suggest that he faces irreparable harm because his lawyers do not have

information about his status in the Afghan penal system, and that because some Afghans have received capital punishment for committing various crimes under Afghan law, he might also. This lack of information, however, hardly constitutes the type of irreparable harm warranting preliminary relief. Speculative harm cannot justify a preliminary injunction. *See Wisconsin Gas Co.*, 758 F.2d at 674 (the irreparable harm that can justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical").

Importantly, petitioner has not demonstrated how an order requiring respondents to provide the information in question would forestall any action by IRoA with respect to Amin Ullah or his status. This failure on petitioner's part is particularly significant given that any information that respondents would provide would necessarily be limited. As explained in the attached declaration of Sandra Hodgkinson, Amin Ullah was transferred to the complete custody and control of the IRoA for their determination as to how to handle his case. Petitioner has made no showing that the United States is privy to the inner workings of IRoA's justice system, and there is no legal basis to compel the Executive to make diplomatic inquiries to a foreign sovereign concerning the status of that sovereign's detention and prosecution of its own citizens. Because petitioner's apparent interest is in obtaining first-hand information about the intentions of the Afghan authorities as to his situation, and because petitioner has not demonstrated that he has even tried to obtain information about his status directly from the Afghan government, he can hardly claim that he needs an order from this Court requiring respondents to provide him with second-hand information. This is a matter between IRoA on the one hand, and Amin Ullah and his counsel, on the other hand. Petitioner has not demonstrated why the United States should be ordered to be a source of information with regard to the Afghan penal system.

12

In contrast, the harm to respondents from an order requiring the Executive to report to the Court concerning the status of a foreign national held as an enemy combatant and transferred to a foreign sovereign would be significant. This is so because such an order necessarily would compel the United States to make diplomatic inquiries to obtain the information, thus infringing on the Executive's power to conduct foreign relations and military operations. *Cf. U.S. ex rel. Keefe v. Dulles*, 222 F.2d 390, 394 (D.C. Cir. 1955) (in case involving U.S. soldier in French custody, court declined to issue injunction requiring Executive Branch to obtain soldier's release through diplomatic negotiations; "the commencement of diplomatic negotiations with a foreign power is completely in the discretion of the President and the head of the Department of State, who is his political agent. The Executive is not subject to judicial control or direction in such matters."). At a minimum, such a reporting obligation would "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments" something of which the Supreme Court has disapproved. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 381 (2000). A reporting requirement, after all, would mean that the results of diplomatic dialogue between the Executive Branch and a foreign government are subject to the supervision and review of another Branch (*i.e.*, the Judiciary). This type of intrusion clearly would pose significant harm to the public interest. As one Judge of this Court has held:

> [T]here is a strong public interest against the judiciary needlessly intruding upon the foreign policy and war powers of the Executive on a deficient factual record. Where the conduct of the Executive conforms to law, there is simply no benefit – and quite a bit of detriment – to the public interest from the Court nonetheless assuming for itself the role of a guardian ad litem for the disposition of these detainees. *See People's Mojahedin Org. v. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) ("[I]t is beyond

13

the judicial function for a court to review foreign policy decisions
of the Executive Branch.").

*Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 (D.D.C. 2005) (Bates, J.).  In sum, the balance of

equities tips in favor of denying petitioner's motion.

## CONCLUSION

For the reasons provided above, petitioner's motion for a report should be denied.

Dated: November 5, 2007                      Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             DOUGLAS N. LETTER
                                             Terrorism Litigation Counsel

                                             ___/s /  *Judry L. Subar*_____
                                             JOSEPH H. HUNT (D.C. Bar No. 431134)
                                             VINCENT M. GARVEY (D.C. Bar No. 127191)
                                             JUDRY L. SUBAR (D.C. Bar No. 347518)
                                             JEAN LIN
                                             ANDREW WARDEN
                                             Attorneys
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Ave., N.W.
                                             Washington, DC  20530
                                             Tel:  (202) 514-3716

                                             Attorneys for Respondents